UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LEOLA SARVER,<br>    *Plaintiff*,<br><br>    *vs.*<br><br>STAPLES THE OFFICE SUPERSTORE EAST,<br>INC.,<br>    *Defendant*. | )<br>)<br>)<br>)   2:12-cv-374-JMS-MJD<br>)<br>)<br>)<br>) |

## **ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION**

Presently pending before the Court is Defendant Staples The Office Superstore East, Inc.'s ("Staples") Motion for Summary Judgment. [Filing No. 44.] Plaintiff Leola Sarver alleges that Staples, her former employer, discriminated against her and ultimately discharged her because she is African American.[1] For the following reasons, the Court grants Staples' motion and enters summary judgment in its favor.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse

---

[1] Ms. Sarver initially alleged religious discrimination, failure to accommodate, and retaliation claims as well, but she has expressly abandoned those claims in response to Staples' summary judgment motion. Those claims will therefore be dismissed with prejudice. [Filing No. 54 at 1.]

party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### RELEVANT BACKGROUND

The following facts are primarily undisputed, except as noted. Where there is a genuine dispute, all reasonable inferences are made in favor of Ms. Sarver, the non-movant.

### A. Ms. Sarver's Employment with Staples

On May 5, 2006, Ms. Sarver, an African-American female, was hired as a Production Associate at Staples' Distribution Center (the "DC") in Terre Haute, Indiana. [Filing No. 46-4 at 34.] In June 2007, Ms. Sarver was promoted to the position of Hourly Trainer. [Filing No. 46-1 at 4; Filing No. 46-4 at 34.] She worked the night shift, for which she earned a base hourly wage plus a night-shift differential of forty cents per hour. [Filing No. 46-1 at 15-16.] Ms. Sarver's responsibilities included getting to know new hires, giving them a tour of the DC, introducing them to other employees, explaining emergency procedures, and taking them to their work stations. [Filing No. 46-1 at 8-9.] Ms. Sarver reported directly to Star Groza, who was the Lead Trainer. [Filing No. 46-1 at 11.]

When she was not training, Ms. Sarver assisted in production and inventory control. [Filing No. 46-1 at 7-8; Filing No. 46-4 at 20-21.] Office workers who were not directly related to production at the DC were subject to a flex schedule. [Filing No. 46-4 at 7-8.] Those workers did not have a set start or end time; they just had to meet their hours. [Filing No. 46-4 at 7.] Shipping Clerks, Receiving Clerks, and Trainers were not on a flex schedule. [Filing No. 46-4 at 7-8.] The parties do not dispute that Ms. Sarver did not have a flex schedule.

On October 31, 2010, Ms. Groza was transferred to a different position at the DC, [Filing No. 46-1 at 11], and the Lead Trainer position was eliminated, [Filing No. 46-4 at 41]. Cassie Hoggatt, the Human Resources Supervisor, became Ms. Sarver's supervisor. [Filing No. 46-1 at 11; Filing No. 46-4 at 10.] Ms. Sarver, the only remaining Hourly Trainer, was transferred to the day shift. [Filing No. 46-1 at 10-11.] Ms. Sarver stopped receiving the forty cents per hour night-shift pay differential after she was transferred to the day shift. [Filing No. 46-1 at 15-16.]

In March 2011, Staples posted an opening for an Hourly Trainer on the night shift. [Filing No. 54-3 at 16.] In April 2011, Staples hired Charlene Potter Ferris for that position. [Filing No. 46-6 at 2.] Ms. Ferris received the forty cents per hour night-shift pay differential. [Filing No. 46-6 at 2.] There is no evidence that Ms. Sarver applied for the night-shift position.

Ms. Sarver remained as an Hourly Trainer on the day shift until she was terminated on October 17, 2011, for violating Staples' call-in policy, as detailed further below. [Filing No. 46-1 at 6; Filing No. 46-4 at 38.]

### B. Staples' Call-In Policies

Staples published two versions of its call-in policy during Ms. Sarver's employment. The first version was effective from 2005 until June 2, 2011 (the "2005 Call-In Policy"). [Filing No. 46-3 at 23.] It provided as follows:

> ***Call-In Policy:***
>
> Associates must leave a message on the voice mail system "call in channel" when reporting an absence. The individual associate and not another person must make the call, unless an emergency situation makes this impossible. No other method of leaving a message is acceptable. This call should be made as soon as possible but no later than thirty (30) minutes before the start of their shift.
>
> Associates who fail to report to work and/or call in thirty (30) minutes after the start of their shift will be subject to the following disciplinary action for each day a no call is received: (each scheduled day represents an offense)
>
>     1st offense in a 12 month period — Written Warning
>     2nd offense in a 12 month period — Final Written Warning
>     3rd offense in a 12 month period — Termination

[Filing No. 46-3 at 23.]

The second version of the call-in policy became effective June 3, 2011 (the "2011 Call-In Policy"). [Filing No. 46-4 at 29.] It provided as follows:

*Call-In Policy:*

If you are going to be absent from work, you are required to call the call in channel at [XXX-XXX-XXXX] as soon as possible but no later than one hour after the start of your scheduled shift. Associates must leave a message on the voice mail system "call in channel" when reporting an absence. The individual associate and not another person must make the call, unless an emergency situation makes this impossible. No other method of leaving a message is acceptable. A call in violation will be considered calling in after one hour after the start of your scheduled shift and will result in the next step of disciplinary action being issued under the performance management policy.

Failure to notify for a full day of absence will be subject to the following steps under the performance management policy:

1 day NC/NS = Written Warning or next level of discipline
2 consecutive days NC/NS = Final Warning or next level of discipline
3 consecutive days NC/NS = voluntary termination

[Filing No. 46-4 at 29.]

### C. Ms. Sarver's Violations of the Call-In Policy

*1) First Violation*

On November 3, 2010, Ms. Sarver was supposed to arrive at work at 6:00 a.m.[2] [Filing No. 46-3 at 20; Filing No. 46-2 at 12.] She did not call in and did not report to work until 6:59 a.m. [Filing No. 46-3 at 20.] Ms. Hoggatt issued Ms. Sarver a written warning for violating Staples' 2005 Call-In policy, which required her to leave a message on the call-in channel no later than 30 minutes after the start of her shift. [Filing No. 46-3 at 20.]

---

[2] The Counseling Notice Ms. Sarver received after her first violation of the call-in policy lists her start time as 5:30 a.m. [Filing No. 46-3 at 20.] In her deposition, Ms. Sarver attested that her start time was actually 6:00 a.m. [Filing No. 46-2 at 11.] Regardless of Ms. Sarver's start time, she does not dispute that she did not call the call-in channel and arrived at work at 6:59 a.m., which was a violation of the 2005 policy. [Filing No. 46-3 at 20; Filing No 46-3 at 23.] Moreover, Ms. Sarver makes much of the fact that her first violation occurred shortly after she switched to the day shift, [Filing No. 54 at 5 (listing this as a "Clarification" instead of a "Disputed" fact)], but she does not contend that it excuses her first violation of the call-in policy.

*2) Second Violation*

In May 2011, Ms. Sarver took time off work to attend a conference. [Filing No. 46-2 at 15.] After she returned, she saw Ms. Hoggatt at the DC for the employee scratch and dent sale. [Filing No. 46-2 at 15; Filing No. 46-4 at 18.] Ms. Sarver "had forgotten [her] actual return time but actually had volunteered to come into work" that day. [Filing No. 46-2 at 15.] Ms. Hoggatt "told [her] to enjoy [her] day off and don't worry about it." [Filing No. 46-2 at 15.] Ms. Hoggatt told Ms. Sarver that Ms. Hoggatt "wasn't responsible for -- to tell [Ms. Sarver]" her schedule. [Filing No. 46-2 at 15; Filing No. 46-2 at 16 ("I thought I was off. But again, [Ms. Hoggatt] stated that she was not responsible for my schedule.").]

Ms. Sarver was scheduled to work on May 24, 2011, but she did not report for her shift or call the call-in channel.[3] [Filing No. 46-3 at 21.] Ms. Hoggatt issued Ms. Sarver a Final Written Warning for her second violation of the 2005 Call-In Policy, since she did not call the call-in channel within 30 minutes of the start of her shift. [Filing No. 46-3 at 21.]

*3) Third Violation*

On October 15, 2011, Ms. Sarver was scheduled to report to work at 5:30 a.m. [Filing No. 46-3 at 22.] She overslept and did not call the call-in channel to report that she would be late

---

[3] Ms. Hoggatt attests that she called Ms. Sarver on May 23, 2011, and left her a voicemail message informing her that she was scheduled to work the following day. [Filing No. 46-6 at 4.] Ms. Sarver denies receiving a message. [Filing No. 54 at 5.] The presence or absence of such a message does not create an issue of material fact because Ms. Sarver admits that Ms. Hoggatt told her that Ms. Sarver's schedule was not Ms. Hoggatt's responsibility. [Filing No. 46-2 at 15; Filing No. 46-2 at 16 ("I thought I was off. But again, [Ms. Hoggatt] stated that she was not responsible for my schedule.").] Moreover, as Staples points out, Ms. Sarver has not submitted an affidavit or any other evidence to rebut Ms. Hoggatt's sworn representation that she left Ms. Sarver a message. [Filing No. 60 at 15.] Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

until 6:40 a.m., which was 1 hour and 10 minutes after the start of her scheduled shift.[4] [Filing No. 46-3 at 22-23; Filing No. 46-2 at 18.]

On October 17, 2011, Ms. Hoggatt told Ms. Sarver that she was being terminated for violating Staples' call-in policy. [Filing No. 46-3 at 6; Filing No. 46-4 at 38.] The decision was made by Ms. Hoggatt and Matt French, who was the Human Resources Manager at that time. [Filing No. 46-4 at 26-27; Filing No. 46-4 at 36.]

### III.
#### DISCUSSION

Based on the Court's review of the parties' briefs,[5] Ms. Sarver proffers five adverse employment actions she contends she suffered while she worked at Staples: 1) Staples failed to promote her to the position of Lead Trainer; 2) Staples transferred her to the day shift; 3) Staples denied her request to be put on a flex schedule; 4) she was "not afforded the opportunity to return to her prior position as night shift trainer" before Staples hired Ms. Ferris; and 5) Staples fired her for violations of its call-in policies as a pretext for discrimination. [Filing No. 54 at 8-11; Filing No. 54 at 14-17.] The Court will address each claim in turn.

---

[4] Staples contends that Ms. Sarver called a loss prevention employee on the day in question and asked her to say that Ms. Sarver called in at 6:20, which would be 50 minutes after the start of her shift and not a violation of the 2011 Call-In Policy. [Filing No. 45 at 8.] Ms. Sarver denies this. [Filing No. 54 at 5-6.] Because Ms. Sarver admitted in her deposition that she was 1 hour and 10 minutes late on the day in question and does not contend that she made a timely call to the call-in channel, [Filing No. 46-2 at 18; Filing No. 54 at 5-6], the parties' dispute regarding the alleged conversation between Ms. Sarver and the loss prevention employee is not material.

[5] The summary judgment briefing in this case is an example of an inefficiency the Court sees too often in employment discrimination cases—the employer moves for summary judgment on any claim it thinks the employee could be making; the employee abandons some claims in response and clarifies others; and the Court is left to sort through what is left based on the employer's reply and its assessment of the briefs. The Court reminds the parties that contention interrogatories can be a useful tool to "minimize uncertainty concerning the scope of [a plaintiff's] claims." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996); Fed. R. Civ. Pro. 33(a)(2).

### A. Proving A Discrimination Claim

To overcome summary judgment on a Title VII discrimination claim, Ms. Sarver may either provide direct evidence of discrimination under the direct method, *[Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)](#), or proceed under the indirect method by utilizing the burden-shifting analysis of *[McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)](#). Ms. Sarver is proceeding under the indirect method of proof. [[Filing No. 54 at 7](#) ("Sarver elects to proceed under the indirect method.").]

To survive summary judgment, Ms. Sarver must first establish a prima facie case of discrimination. *[Id.* at 802](#). Specifically, she must show that: (1) she was a member of a protected class; (2) she adequately performed her employment responsibilities; (3) despite adequate performance, she suffered an adverse employment action; and (4) she received different treatment than similarly situated persons who were not members of the same protected class. *[See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007) (citation omitted)](#).

Staples does not challenge that Ms. Sarver is a member of a protected class or that she was adequately performing her employment responsibilities. Thus, Ms. Sarver need only show the last two elements to establish a prima facie case—that she suffered an adverse employment action and that she received different treatment than similarly situated persons who were not members of the same protected class. If she can make that showing, the burden shifts to Staples to come forth with a "legitimate, non-discriminatory reason" for its actions. *[Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) (citation omitted)](#). If Staples can do so, it will prevail unless Ms. Sarver can come forward with admissible evidence that the proffered non-discriminatory reason is "a pretext for intentional discrimination." *[Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 551 (7th Cir. 2011) (citation omitted)](#).

### B. Ms. Sarver's Alleged Discrimination

#### 1) *Failure to Promote to Lead Trainer*

Ms. Sarver argues that she suffered an adverse employment action when her supervisor, Lead Trainer Ms. Groza, was transferred to a different position and Staples did not promote Ms. Sarver to Lead Trainer. [Filing No. 54 at 8.] Ms. Sarver contends that with her experience, she "was a great candidate to supervise the training department." [Filing No. 54 at 9.]

Staples points out that it eliminated the Lead Trainer position at the Terre Haute DC in October 2010 after it transferred Ms. Groza to another position. [Filing No. 45 at 10 (citing Filing No. 46-4 at 6; Filing No. 46-5 at 8).]

In a failure to promote claim, "a prima facie case presupposes the existence of an open position." *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 673 (7th Cir. 2009) (citing *Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1005-06 (7th Cir. 2000) (defining second element of prima facie case in failure-to-promote claim as plaintiff "applied for, and was qualified for an open position")). "The lack of an opening is always a legitimate reason for refusing to hire or promote." *Jones*, 554 F.3d at 673. If no employee is promoted during the relevant time period, "a failure-to-promote claim must fail because the claimant cannot argue that he was treated differently than anyone else." *Id.*

The undisputed evidence is that after transferring Ms. Groza from the Lead Trainer position, Staples eliminated that position as "purely a financial budgetary decision based on softening sales." [Filing No. 46-5 at 8.] There has not been a Lead Trainer since Ms. Groza was transferred from that position. [Filing No. 46-5 at 8; Filing No. 46-4 at 6.] Ms. Sarver ignores this evidence. Because the lack of an opening is "always a legitimate reason for refusing to pro-

mote," *Jones*, 554 F.3d at 673, Ms. Sarver has not shown a prima facie case of employment discrimination for Staples' failure to promote her to Lead Trainer.

　　*2) Transfer to Day Shift*

Ms. Sarver contends that she suffered an adverse employment action when she was transferred to the day shift. [Filing No. 54 at 9-11.] She points out that because of her shift transfer, she was no longer entitled to the night-shift pay differential of forty cents per hour. [Filing No. 54 at 9-11.]

Staples argues that Ms. Sarver's claim regarding her transfer to the day shift is barred because the transfer occurred more than 300 days before she filed her discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). [Filing No. 60 at 2-3.] Alternatively, Staples contends that Ms. Sarver's transfer to the day shift was not an adverse employment action because it did not significantly change her compensation or cause her skills to atrophy. [Filing No. 60 at 5.]

An EEOC charge "shall be filed ... within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). If a plaintiff fails to file a timely charge concerning a discrete act of discriminatory conduct, her claim is time-barred and "cannot be the basis of [her] Title VII claims." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013).

Ms. Sarver was transferred to the day shift on October 31, 2010. [Filing No. 46-1 at 10-11.] She did not file her EEOC charge until 487 days later on March 1, 2012. [Filing No. 61-1 at 2.] Because she did not timely file her EEOC charge for purposes of pursuing a claim regarding her initial transfer to the day shift, it cannot be the basis of her Title VII claims. *See Lavalais*, 734 F.3d at 633 (holding that because an employee did not file his EEOC charge within

300 days of being transferred to a different shift, "his initial placement on the midnight shift cannot be the basis of his Title VII claims").[6]

### 3) Failure to Allow Flex Schedule

#### a. Adverse Employment Action

Ms. Sarver argues that she suffered an adverse employment action when she was not allowed to be on a flex schedule and, instead, was subject to Staples' call-in policies. [Filing No. 54 at 9.] She claims that the majority of the employees who maintained office space around her were on a flex schedule, which meant that they had no set hours for reporting to work and were not subject to the call-in policies. [Filing No. 54 at 2.] Ms. Sarver contends that in conjunction with her transfer to the day shift, Staples' denial of her flex time request "set her up to fail." [Filing No. 54 at 9.]

Staples contends that denying Ms. Sarver a flex-time schedule was not an adverse employment action because it did not rise to the level of creating an objective hardship. [Filing No. 60 at 6 (citing case law).] Although Sarver may have "desired the freedom to come in late without fear of penalty," it is reasonable to assume that other employees would have other prefer-

---

[6] Even if the Court considered the merits of Ms. Sarver's claim regarding her transfer to the day shift, it agrees with Staples that Ms. Sarver's transfer did not significantly alter her compensation, cause her skills to atrophy, or subject her to an unbearable work environment. Without the night-shift differential, Ms. Sarver lost approximately $3.20 per 8 hour shift, which was 2% of her pay. [See Filing No. 60 at 5.] This is not the significant change in benefits required for an adverse employment action. See Alexander v. Casino Queen, Inc., 739 F.3d 972, 980-81 (7th Cir. 2014) (emphasizing that the change in benefits must be "significant" and that a placement that jeopardizes 40%-73% of a plaintiff's tip compensation is significant); see also Waters v. City of Dallas, 2012 WL 5363426, *9-10 (N.D. Tex. 2012) (holding that an employee did not experience adverse employment action because reasonable factfinder could not conclude that trade-off between night-shift differential and day-shift hours caused plaintiff harm). Moreover, Ms. Sarver's job duties as an Hourly Trainer did not change with the shift transfer. See O'Neal v. City of Chicago, 392 F.3d 909, 913 (7th Cir. 2004) ("To sustain a federal employment discrimination suit, a plaintiff must show something more than the ordinary difficulties associated with a job transfer. . . . As we have stated before, being shifted to an essentially equivalent job that an employee does not happen to like as much does not a Title VII claim create.").

ences, and idiosyncratic preferences for one job over another are not actionable. [Filing No. 60 at 7.]

"The phrase 'adverse employment action' is a 'judicial gloss' [on the term 'discrimination' in Title VII] that 'often may help to express the idea—which the Supreme Court *has* embraced—that it is essential to distinguish between material differences and the many day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms and conditions.'" Dass v. Chicago Bd. of Educ., 675 F.3d 1060, 1068 n.9 (7th Cir. 2012) (emphasis in original) (quoting Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006)). "The idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." Hunt v. City of Markham, Ill., 219 F.3d 649, 653 (7th Cir. 2000). Therefore, "[a] materially adverse employment action is something 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Rhodes, 359 F.3d at 504 (quoting Crady v. Liberty National Bank and Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)).

Ms. Sarver cites no authority for her proposition that the denial of a flex-time request constitutes an adverse employment action, and the Seventh Circuit Court of Appeals has held in the context of a constructive discharge claim that the denial of a flex-time request is not actionable. Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 877 (7th Cir. 1999); *see also* Rabinovitz v. Pena, 89 F.3d 482, 486, 489 (7th Cir. 1996) (discussing the "mere inconveniences" of an employee who had, among other things, been denied a flex-time request). In fact, the evidence in this case shows why some employees might prefer not to be on a flex schedule: Staples employees who were on a flex schedule were not eligible for perfect attendance incentives that entitled

them to extra paid leave. [Filing No. 46-5 at 4 (describing incentive program where employee who has perfect attendance for a quarter receives an extra day of paid leave and an employee who has perfect attendance for a year receives an additional week of paid leave).] Subjective preferences of an employee are generally insufficient to show an adverse employment action. *See Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002). Accordingly, Staples' denial of Ms. Sarver's flex-time request was not an adverse employment action.

### b. Proffered Comparator

Even if Staples' denial of Ms. Sarver's flex-time request constitutes an actionable adverse employment action, the Court concludes that Ms. Sarver has not proffered a similarly situated comparator for purposes of making a prima facie case of discrimination.

Ms. Sarver compares herself to Tina Lillie, who was a Human Resources Administrative Assistant under Ms. Hoggatt's supervision and on a flex schedule. [Filing No. 54 at 12.] Staples disputes that Ms. Lillie was similarly situated to Ms. Sarver, emphasizing the differences in the employees' duties. [Filing No. 60 at 10-11.] It further points out that if Ms. Sarver was not available for training, a competent production associate had to be removed from production to help the new employee.[7] [Filing No. 60 at 10.]

The Seventh Circuit Court of Appeals has emphasized that "the similarly-situated inquiry is flexible, common-sense, and factual. It asks 'essentially, are there enough common features between the individuals to allow a meaningful comparison?'" *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). Although similarly situated employees must be "directly comparable to the plaintiff in all material respects," they "need not be identical in every conceivable

---

[7] Staples points out that the night-shift Hourly Trainer, Ms. Ferris, would make a more apt comparator and emphasizes that Staples also did not permit her to work on a flex schedule. [Filing No. 60 at 11.] Staples cites no evidence for its assertion that Ms. Ferris was not permitted to be on a flex schedule, so the Court will not consider it.

way[,]" and the Court is "looking for comparators, not clones." *Id.* at 846 (citations omitted). As long as distinctions between the plaintiff and the proposed comparator are not "so significant that they render the comparison effectively useless," the similarly-situated requirement is satisfied. *Id.* Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiff [has met his] burden on the issue." *Id.* at 847.

Typically, a plaintiff must at least show that a comparator: (1) had the same supervisor; (2) was subject to the same standards; and (3) engaged in "similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (citation omitted). The Seventh Circuit has cautioned, however, that these factors are "not a 'magic formula'" and that the "similarly-situated inquiry should not devolve into a mechanical, one-to-one mapping between employees." *Id.* (citation omitted).

After the Lead Trainer position was eliminated, Ms. Hoggatt began supervising Ms. Sarver. [Filing No. 46-1 at 11; Filing No. 46-4 at 10.] Ms. Sarver's responsibilities as an Hourly Trainer included getting to know new hires, giving them a tour of the DC, introducing them to other employees, explaining emergency procedures, and taking them to their work stations. [Filing No. 46-1 at 8-9.] When she was not training, Ms. Sarver assisted in production and inventory control. [Filing No. 46-1 at 7-8; Filing No. 46-4 at 20-21.] If Ms. Sarver was not available to train a new employee, a competent production associate would be pulled off of production to cover. [Filing No. 61-2 at 5.]

Ms. Lillie was also supervised by Ms. Hoggatt. [Filing No. 46-4 at 3-4.] As the Human Resources Administrative Assistant, Ms. Lillie was responsible for coordinating Staples' recruiting efforts, reviewing employment applications, backing up payroll, receiving performance man-

agement training documents, and recording information in Staples' database of records. [Filing No. 46-4 at 3-4.] Ms. Lillie would occasionally assist in the DC doing production work. [Filing No. 46-4 at 23.] There is no evidence that Ms. Lillie did any training.

Even construed in a light most favorable to Ms. Sarver, the evidence shows that she and Ms. Lillie are not similarly situated comparators. They had the same supervisor and both did production work at times, but the bulk of their job responsibilities were materially different. In fact, the undisputed evidence shows that if Ms. Sarver was not available for training, Staples had to pull a competent production associate off production to cover. [Filing No. 61-2 at 5.] In other words, Staples had a business incentive to make sure that Ms. Sarver was on time working regular hours. This business justification for not permitting Ms. Sarver to have a flex schedule distinguishes Staples' treatment of the two women. Accordingly, the Court concludes that Ms. Sarver has not presented a similarly situated comparator for purposes of proving her claim regarding Staples' denial of her flex-time request. *Coolidge v. Consol. City of Indianapolis*, 505 F.3d 731, 736 (7th Cir. 2007) (requiring similarly-situated comparator to prove prima facie case); *Garcia v. United States Postal Serv.*, 414 Fed. Appx. 855, 858 (7th Cir. 2011) ("Because Garcia cannot point to a similarly situated employee outside the protected class who was treated more favorably, he cannot establish a prima facie case of national-origin discrimination.").

*4) Failure to Return to Night Shift*

Ms. Sarver argues that she suffered an adverse employment action when she "was not afforded the opportunity to return to her prior position as night shift trainer even though she had held that exact same position for over four years prior." [Filing No. 54 at 11.] She points out that if she had returned to that position, she would have been entitled to the night-shift differential, which would have raised her wages by forty cents per hour. [Filing No. 54 at 11.]

Staples emphasizes that it did not hire Sarver for the night-shift Hourly Trainer position because she did not apply. [Filing No. 60 at 11.]

To make a prima facie case in the failure to hire context, the *McDonnell Douglas* test requires Ms. Sarver to show, among other things, that she "was qualified for an open position *for which she applied*" and that her "application for employment was rejected." *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005) (emphasis added).

The undisputed evidence shows that in March 2011, Staples posted an opening for an Hourly Trainer on the night shift, [Filing No. 54-3 at 16], and hired Charlene Potter Ferris the following month, [Filing No. 46-6 at 2]. Ms. Sarver points to no evidence that she applied for that position. Therefore, she cannot make a prima facie case of employment discrimination on this claim.

### 5) Termination for Violating Call-In Policy

The Court notes that Ms. Sarver references her termination under the heading "Defendant's stated reason for the termination of Sarver is pretext." [Filing No. 54 at 14.] That heading suggests that Ms. Sarver is not trying to make a prima facie case regarding her actual termination but, instead, relies on it for the pretext element of the *McDonnell Douglas* burden-shifting analysis. But because the Court has concluded that Ms. Sarver has not made a prima facie case of discrimination with regard to any of her other claims, the burden never shifted to Staples to come forth with a legitimate, non-discriminatory reason for its actions and, consequently, the burden never shifted back to Ms. Sarver to prove pretext. *Hill*, 625 F.3d at 1001; *Serednyj*, 656 F.3d at 551. Thus, the Court will not address Ms. Sarver's pretext argument.

If Ms. Sarver did intend to make a prima facie case of discriminatory discharge, that claim fails because, as Staples points out in its reply, she has not proffered a similarly-situated

employee who violated Staples' call-in policies and was not discharged. [Filing No. 60 at 12; *see also* Filing No. 46-4 at 40 (Staples' interrogatory responses listing 8 former employees of various races who were discharged for violating the call-in policies).] Because Ms. Sarver did not point to a similarly-situated employee outside the protected class who was treated more favorably with regard to the call-in policy, she has not established a prima facie case of discriminatory discharge. *Coolidge*, 505 F.3d at 736 (requiring similarly-situated comparator to prove prima facie case); *Garcia*, 414 Fed. Appx. at 858.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary Judgment. [Filing No. 44.] The parties' Joint Motion to Enlarge Final Pretrial Filing Deadlines is **DENIED AS MOOT**. [Filing No. 66.] Final judgment shall issue accordingly.

**Distribution via ECF only:**

Benjamin R. Aylsworth
BIESECKER DUTKANYCH & MACER LLC
baylsworth@bdlegal.com

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com

Alan L. McLaughlin
LITTLER MENDELSON PC
amclaughlin@littler.com

Brian Lee Mosby
LITTLER MENDELSON, P.C.
bmosby@littler.com

William F. Dugan
SEYFARTH SHAW
wdugan@seyfarth.com

Abad Lopez
SEYFARTH SHAW, LLP
alopez@seyfarth.com